[No. B188829. Second Dist., Div. Eight. Aug. 27, 2007.]

GUADALUPE GONZALEZ, Plaintiff and Appellant, v.
AUTOLIV ASP, INC., Defendant and Respondent.

## COUNSEL

Perry H. Rausher and Steven C. Gambardella for Plaintiff and Appellant.

Gordon & Rees, Roger M. Mansukhani, Christopher B. Cato and Eric M. Volkert for Defendant and Respondent.

## OPINION

**COOPER, P. J.**—We reverse the entry of summary judgment in favor of Autoliv ASP, Inc. (Autoliv). Autoliv failed to provide any evidence negating the theory that the airbag it manufactured was defective under the risk-benefit theory of design defect. Therefore, the summary adjudication of Sister Guadalupe Gonzalez's cause of action for strict products liability was error. The trial court correctly summarily adjudicated Gonzalez's remaining causes of action for negligent products liability and breach of warranty.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 2003, Gonzalez, a passenger in a 1998 Ford Taurus, suffered injury to her right eye as a result of a car accident.[1] She sued the other driver, Ford Motor Company, Galpin Ford and several Doe defendants.

---

[1] The parties agree only that Gonzalez contends she suffered injury to her right eye. In her separate statement, Gonzalez states that "Autoliv cannot even answer the question of whether the deploying airbag even struck Sister Guadalupe, causing the injuries complained of in this

Autoliv eventually was named as Doe 3 and is the sole respondent in this appeal. Autoliv manufactured the front airbag modules used in the 1998 Ford Taurus.

The complaint included causes of action for negligent and strict products liability and breach of warranty. Gonzalez "contends that the front airbag system in the vehicle was defectively manufactured or designed because the airbag allegedly deployed with excessive and dangerous force causing damage to Plaintiff's right eye." She also contends the airbag should not have deployed in the low speed collision. It is undisputed that "[t]he front airbag module installed in the vehicle in this case fully deployed the cushion from the airbag module as it was designed and manufactured to do."

*Motion for Summary Judgment*

Autoliv moved for summary judgment or alternatively for summary adjudication arguing as follows: "(1) Autoliv as a component part manufacturer is not liable for any design, manufacturing, or failure to warn defect in a finished product that Autoliv did not design, manufacture, package, or sell; [¶] (2) The undisputed evidence establishes that Autoliv's component part is not defective; and [¶] (3) Plaintiff has failed to produce sufficient evidence to create a triable issue of fact as to the existence of any defect in Autoliv's component part that caused her injury."

In its motion, Autoliv further maintained that it did not manufacture the "overall front airbag system used by Ford" but instead manufactured only "the front airbag module." According to Autoliv's motion, "[a] front airbag system contains components including sensors, a Restraint Control Module ('RCM'), and front airbag modules, among other components, all of which are assembled and installed into the vehicle. . . . The RCM controls when a front airbag will deploy. It processes information from the sensors in the vehicle and sends a deployment signal to a front airbag module when it receives information that a crash warranting front airbag deployment is occurring. Airbag modules are designed to deploy only when a deployment signal is sent from the RCM to the module." "The front airbag modules in the 1998 Ford Taurus vehicles contain, among other things, an initiator (or 'squib'), an inflator, and a textile bag (or 'cushion'). When an airbag module receives a signal to deploy from the RCM, the initiator generates the heat required to start a pyrotechnic reaction within the airbag module's inflator,

---

lawsuit . . . ." However, for purposes of summary judgment we assume that Gonzalez actually suffered injury to her right eye. No part of Autoliv's motion is based on the absence of damages.

which in turn causes the cushion to inflate and deploy from the module." These "facts" were supported by Russell Gans's declaration.[2]

Gans is the Autoliv employee who "coordinated" with Ford regarding airbag modules. To show that the airbag module was not defective, Autoliv relied on Gans's declaration. He explained: "An airbag cushion is designed to deploy when, and only when, the squib activates the inflator after receiving a signal from the RCM. The photographs [of the airbag cushions from the car Gonzalez was riding in] appear to depict a passenger side front airbag which has fully deployed from the airbag module. My observations from my physical inspection of the vehicle were consistent with a normal full deployment, and the quality records show that the modules manufactured during the same time frame as the subject module that were tested met all of Ford's specifications." Gans continued: "I am not aware of an inflator deploying at a rate in excess of the manufacturing requirements during an accident that warranted an airbag deployment. Moreover, there is no evidence that the airbag module at issue did not function properly during deployment or that the deployment rate (speed) exceeded Ford's specifications."

Gans further stated that "Autoliv manufactured . . . airbag modules for Ford . . . according to specifications provided by Ford. Autoliv then supplied the manufactured airbag modules to Ford. Autoliv was not involved in the installations of these modules into the vehicles. Aside from manufacturing and supplying the front airbag modules, Autoliv did not have any other involvement or responsibility with respect to the front airbag systems utilized in the 1998 Ford Taurus vehicles." Gans declared that Autoliv did not manufacture the overall front airbag system, did not test the overall system and did not install the system in the Ford vehicles.

*Opposition to Summary Judgment*

Gonzalez opposed summary judgment arguing that "the airbag deployed in a manner which was unnecessarily and overly aggressive, which struck plaintiff's right front head region and right eye, which was the cause of blindness in that eye." Gonzalez's opposition was supported by the declaration of D. Theodore Zinke. He stated: "At the time the 1998 Ford Taurus passenger airbag system was being engineered, Autoliv knew or should have known that a phenomenon known as 'bag slap' from a deploying airbag . . . could cause eye injuries. Defendant Autoliv did not conform to prudent engineering practices by failing to consider the risk of eye injuries when designing, manufacturing and supplying the 1998 Ford Taurus passenger

---

[2] In her opposition, Gonzalez does not dispute the accuracy of these "facts" but states only that they are irrelevant.

airbag module to defendant Ford." "A reasonably prudent airbag system design engineer would have evaluated the results of testing of the 1998 Ford Taurus passenger airbag system to determine whether the deploying bag would strike the passenger's head in a potentially injurious manner. To date, plaintiff has received no evidence to suggest that such an appropriate evaluation was conducted during the design and testing of the 1998 Ford Taurus passenger airbag system."

*Judgment*

The trial court adopted a judgment as proposed by Autoliv. The court ruled that Zinke's declaration lacked foundation.

Gonzalez timely appealed.

## DISCUSSION

### I. *Strict Products Liability*

In their separate statements, the parties agree that "Plaintiff contends that the front airbag system in the vehicle was defectively manufactured or designed because the airbag allegedly deployed with excessive and dangerous force causing damage to Plaintiff's right eye." D. Theodore Zinke, Gonzalez's expert, concluded that Autoliv failed to consider that " 'bag slap' from a deploying airbag could cause eye injuries" and this risk could have been eliminated by the use of internal tethering, a "fact" Autoliv challenges.

#### A. *Design Defect*

■ "[A] product is defective in design either (1) if the product has failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if, in light of the relevant factors . . . the benefits of the challenged design do not outweigh the risk of danger inherent in such design." (*Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 418 [143 Cal.Rptr. 225, 573 P.2d 443] (*Barker*).) "[I]n evaluating the adequacy of a product's design pursuant to this latter standard, a jury may consider, among other relevant factors, the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." (*Id.* at p. 431.) "[O]nce the plaintiff makes a prima facie showing that the injury was proximately caused by the

product's design, the burden should appropriately shift to the defendant to prove, in light of the relevant factors, that the product is not defective." (*Ibid.*)[3]

These principles were applied in *McCabe v. American Honda Motor Co.* (2002) 100 Cal.App.4th 1111 [123 Cal.Rptr.2d 303], a case similar to the present one. Lucille McCabe sued Honda, the manufacturer of the airbag in her Honda Civic, when the airbag failed to deploy in a collision. (*Id.* at p. 1116.) Honda argued that "the airbag performed in accordance with its intended design." (*Id.* at p. 1117.) Honda's expert opined that "the air bag system performed as designed, and there was 'no evidence of a defect.' " (*Id.* at p. 1118.) The court reversed the entry of summary judgment in favor of Honda because (among other reasons) Honda failed to negate the risk-benefit theory of design defect. (*Ibid.*) The court held that even if Honda demonstrated that "the air bag performed under the circumstances of the crash in conformity with its design . . . , such evidence alone is not sufficient to negate McCabe's theory that the design itself was defective under either the consumer expectation or risk-benefit theory." (*Id.* at p. 1123.) "Under the risk-benefit theory, McCabe need only show the design caused her injuries; if so, the burden shifts to the defendant to prove the benefits of the design outweigh its inherent risks." (*Id.* at p. 1126.) The burden fell to Honda even on summary judgment. (*Id.* at p. 1127.)

▮ Like the defendant in *McCabe*, Autoliv argues that its airbag performed in accordance with its intended design and Autoliv's expert, Gans, opined that the airbag performed as it was designed to do. Specifically, Gans concluded that "it appears that the airbag module deployed as it was designed and manufactured to do." However, also like in *McCabe*, Autoliv offered no evidence that the benefits of the design outweigh its inherent risks—evidence necessary to show the absence of a design defect, a burden carried by the defendant where as in this case, Gonzalez alleges strict products liability.

---

[3] Autoliv cites *Visueta v. General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1615 [286 Cal.Rptr. 402], for the proposition that "a plaintiff must present affirmative evidence to establish that there is a defect in a product; mere allegations or conjecture are insufficient." In that case, the appellate court affirmed the entry of summary judgment in favor of General Motors Corporation. The plaintiff had claimed that the lever to the parking brake was installed in an inaccessible location and this defect prevented the plaintiff from using the parking break to avoid a collision. (*Id.* at p. 1612.) The court found that "[b]ecause the parking brake was inoperable due to the improper maintenance, it made no difference where the parking brake lever was located." (*Id.* at p. 1617.) "Visueta could not defeat the summary judgment motion by speculating that the collision was '. . . attributable to several factors other than inadequate maintenance.' " (*Id.* at p. 1615.) In this case, there is no similar evidence that Gonzalez's eye injury was attributable to something other than the airbag deployment.

■ This conclusion is not altered by Autoliv's argument that it is a component manufacturer. A component part manufacturer that had no role in designing the finished product and who supplied a nondefective component part cannot be held liable for the defective product. (*Lee v. Electric Motor Division* (1985) 169 Cal.App.3d 375, 385–387 [215 Cal.Rptr. 195].) " 'A component seller who simply designs a component to its buyer's specifications, and does not substantially participate in the integration of the component into the design of the product, is not liable . . . .' " (*Artiglio v. General Electric Co.* (1998) 61 Cal.App.4th 830, 841 [71 Cal.Rptr.2d 817], quoting Rest.3d Torts, Products Liability, § 5, com. e, p. 135.) However, "[a] component part manufacturer may be held liable for damages caused by a component part which was defective at the time it left the component part manufacturer's factory." (*Wiler v. Firestone Tire & Rubber Co.* (1979) 95 Cal.App.3d 621, 629 [157 Cal.Rptr. 248].)

The component manufacturer defense applies to " 'generic' or 'off-the-shelf' components, as opposed to those which are ' "really a separate product with a specific purpose and use." ' [Citations.]" (*Springmeyer v. Ford Motor Co.* (1998) 60 Cal.App.4th 1541, 1554 [71 Cal.Rptr.2d 190].) "[T]he policy reasons favoring strict products liability for component manufacturers are the same as for other participants in the general enterprise of manufacturing and marketing consumer goods, and these interests, including the incentives for improved product safety, outweigh the burden imposed by increased litigation." (*Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 481 [127 Cal.Rptr.2d 614, 58 P.3d 450].) Thus, for example, the manufacturer of silicon could not be held liable for a design defect in silicon breast implants. (*Artiglio v. General Electric Co., supra,* 61 Cal.App.4th at p. 841.) The manufacturer of a motor could not be liable when a meat grinding machine containing the component motor injured the plaintiff. (*Lee v. Electric Motor Division, supra,* 169 Cal.App.3d at p. 387.) In contrast, a fan manufacturer could be held liable along with Ford when the fan broke off the engine and injured the plaintiff. (*Springmeyer v. Ford Motor Co., supra,* 60 Cal.App.4th 1541.)

But the component manufacturer defense requires that the component part standing alone is not defective. " '[T]he manufacturer of a product component or ingredient is not liable for injuries caused by the finished product *unless it appears that the component itself was "defective" when it left the manufacturer.*' " (*Tellez-Cordova v. Campbell-Hausfeld/Scott Fetzger Co.* (2004) 129 Cal.App.4th 577, 581 [28 Cal.Rptr.3d 744], italics added.) Autoliv's argument that "courts have refused to extend products liability to the manufacturer of a non-defective component part absent a showing of substantial participation in the integration of that component into the ultimate finished product" requires that it have manufactured "a non-defective component."

■ Autoliv correctly points out that comment e to section 5 of the Restatement Third of Torts, Products Liability, page 135 (sometimes, Restatement) provides: "When the component seller is substantially involved in the integration of the component into the design of the integrated product, the component seller is subject to liability when the integration results in a defective product and the defect causes harm to the plaintiff." However, when considered in its entirety, the Restatement does not support Autoliv's position.

The Restatement, section 5 explains: "The refusal to impose liability on sellers of nondefective components is expressed in various ways, such as the 'raw material supplier defense' or the 'bulk sales/sophisticated purchaser rule.' However expressed, these formulations recognize that component sellers who do not participate in the integration of the component into the design of the product should not be liable merely because the integration of the component causes the product to become dangerously defective. This Section subjects component sellers to liability when the components themselves are defective *or* when component providers substantially participate in the integration of components into the design of the other products." (Rest.3d Torts, Products Liability, § 5, com. a, p. 131, italics added.)

The Restatement further illustrates a defective component for which the component manufacturer may be held liable. "For example, if motorcycle headlights intended for rugged off-road use are so designed that they fail when the motorcycle is driven over bumpy roads, they are defective within the meaning of § 2(b). Since reasonable alternative designs are available that prevent such foreseeable failures from occurring, the headlight supplier is subject to liability for harm caused by the defectively designed headlight." (Rest.3d Torts, Products Liability, § 5 com. b, p. 132.)

■ Section 2, subdivision (b), provides: a product is defective "in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alterative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe." (Rest.3d Torts, Products Liability, § 2, subd. (b).)

■ Taken together, section 2, subdivision (b), and section 5 of the Restatement indicate that a component part manufacturer may be held liable for a defect in the component. When viewed in its entirety, the Restatement does not support Autoliv's argument that "[o]nly if the component part analysis establishes sufficient control over the design of the alleged defect should the component manufacturer be held to the standard of the risk-benefit test." Instead, the test considering foreseeable risks of harm and alternative

designs is applied to the component part manufacturer when the alleged defect is in the component.

For the same reason, the cases Autoliv cites, which do not include an alleged defect in the component part, fail to show that the risk-benefit test is inapplicable, as Autoliv argues. For example, Autoliv relies on *Wiler v. Firestone Tire & Rubber Co., supra*, 95 Cal.App.3d 621, in which discovery showed no defects existed in a Firestone tire. The car accident at issue in that case was caused by "the valve stem manufactured and attached to it [(the tire)] by Ford Motor Company." (*Id.* at p. 625.) The appellate court affirmed the entry of summary judgment stating "as plaintiffs' evidence shows no defect in the component part, the tire, which was manufactured by Firestone, it may not be held liable." (*Id.* at p. 629.) The court reasoned: "In dealing with an automotive manufacturer which designs and produces automotive products, Firestone could reasonably believe Ford Motor Company would take appropriate measures to insure proper design and installation of the valve stem. Accordingly, responsibility for the *valve, as distinguished from the tire,* rests with Ford Motor Company and not Firestone." (*Id.* at pp. 629–630.)

In *Lee v. Electric Motor Division, supra*, 169 Cal.App.3d 375, the appellate court affirmed summary judgment in favor of a component part manufacturer. The plaintiff was injured by a meat grinding machine and sued the manufacturer of the motor. The court found that there was no defect in the motor and the manufacturer of the motor had no role in designing the finished meat grinding machine. (*Id.* at pp. 384–386.) "The evidence establishes that defendant had no role in the design of the machine, and that defendant reasonably relied on Lasar to take appropriate measures to insure proper design and installation of the motor. We conclude that defendant's manufacture or design of the nondefective motor could not have proximately caused the injury." (*Id.* at pp. 386–387.)

█ In *Wiler* and *Lee*, the courts upheld summary judgment in favor of the component part manufacturer where there was no defect in the component and the component part manufacturer did not participate in the installation of the component into the finished product. In contrast, here, for purposes of summary judgment, Autoliv has not shown that there was no defect in the component part, i.e., the airbag module. These cases do not hold, as Autoliv argues, that the risk-benefit test is inapplicable to determine a defect in a component. Instead they hold that, where there is no defect in the component, a component part manufacturer cannot be liable for a defect that arises in the integrated product.

We are aware that courts applying the law of different states have reached the opposite conclusion applying a risk-benefit test in cases involving airbags. For example in *Crespo v. Chrysler Corp.* (S.D.N.Y. 1999) 75 F.Supp.2d 225, applying New York law, the court awarded summary judgment in favor of an airbag manufacturer where the plaintiff failed to provide evidence that it was feasible to design the product in a safer manner. (*Id.* at p. 228.) Similarly, in *Diluzio-Gulino v. Daimler Chrysler* (2006) 385 N.J. Super. 434 [897 A.2d 438], the court awarded judgment notwithstanding the verdict in favor of an airbag manufacturer where the plaintiff did not provide evidence that an alternative design is feasible, practical, and safer than the manufacturer's design.

■ The cases from other jurisdictions are not helpful because they place the burden on the plaintiff to provide evidence of the feasibility of an alternative design. Under California law, "[O]nce the plaintiff makes a prima facie showing that the injury was proximately caused by the product's design, the burden should appropriately shift to the defendant to prove, in light of the relevant factors, that the product is not defective." (*Barker, supra,* 20 Cal.3d at p. 431.) "[A] manufacturer who seeks to escape liability for an injury proximately caused by its product's design on a risk-benefit theory should bear the burden of persuading the trier of fact that its product should not be judged defective, the defendant's burden is one affecting the burden of proof, rather than simply the burden of producing evidence." (*Id.* at pp. 431–432.) "The allocation of [this] burden is particularly significant in this context inasmuch as this court's product liability decisions . . . have repeatedly emphasized that one of the principal purposes behind the strict product liability doctrine is to relieve an injured plaintiff of many of the onerous evidentiary burdens inherent in a negligence cause of action." (*Id.* at p. 431.) Gonzalez provided sufficient evidence that would allow a jury to conclude a design feature of the airbag caused her injury. (See *Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 119 [184 Cal.Rptr. 891, 649 P.2d 224].)

## B. *Evidentiary Ruling*

We have relied on a portion of Zinke's declaration even though the trial court ruled that Zinke's declaration "lacks sufficient foundation to raise any triable issue of material fact as to any defect with the component airbag or failure on the part of Autoliv to conform to the industry standards for airbag component manufacturers."[4]

---

[4] Contrary to Gonzalez's argument, Autoliv obtained a ruling on its foundation objection as we have quoted and therefore it is not waived. (*Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1186–1187, fn. 1 [91 Cal.Rptr.2d 35, 989 P.2d 121] [finding objections for which no ruling was obtained to be waived], overruled on another ground in *Aguilar v. Atlantic Richfield Co.* (2001)

Autoliv's foundational objection was as follows: "As a component part manufacturer, Autoliv is not liable for a defect with the overall airbag system into which its non-defective component part is integrated. The evidence is undisputed that Autoliv did not substantially participate in the manufacture, design, or distribution of the airbag systems (or the 1998 Taurus line), but merely manufactured the component airbag module to specifications provided by Ford. Accordingly, the component part/sophisticated purchaser defense applies. Mr. Zinke's declaration provides no basis for creating a material dispute as to any issue of fact relevant to this analysis, and therefore is inadmissible as irrelevant. The basic principles in the airbag systems design and manufacturing industry are irrelevant to an analysis of the duty of a component manufacturer/supplier, and Mr. Zinke's declaration offers no foundational evidence to support a finding of relevance. Moreover, Mr. Zinke's conclusory opinions as to industry standards, as well as to causation, similarly lack any factual basis for support."

Autoliv's foundational objection is based on principles underlying the component manufacturer defense. As we have explained, the defense applies only where there is no defect to the component part, something Autoliv failed to show. Therefore, the court erred in finding that Zinke's testimony lacked foundation.

## II. Gonzalez's Remaining Contentions Lack Merit

### A. Manufacturing Defect

■ A manufacturing defect occurs when an item is manufactured in a substandard condition. (*McCabe v. American Honda Motor Co., supra,* 100 Cal.App.4th at p. 1120.) Gonzalez presents no evidence of a manufacturing defect. There is no allegation, let alone evidence, that the airbag module in the Ford Taurus in which Gonzalez was a passenger performed differently from other identical units. (See *ibid.* [manufacturing defect "is often demonstrated by showing the product performed differently from other ostensibly identical units of the same product line"].) Gonzalez does not dispute that the "front airbag module installed in the vehicle in this case fully deployed the cushion from the airbag module as it was designed and manufactured to do." To the extent that Gonzalez continues to pursue the contention that the airbag had a manufacturing defect (which she does not support in her appellate briefs), it lacks merit.

25 Cal.4th 826, 853 [107 Cal.Rptr.2d 841, 24 P.3d 493].) We do not consider Autoliv's other objections for which the trial court provided no ruling. (See *Sharon P., supra,* at pp. 1186–1187, fn. 1.)

### B. *Failure to Warn*

 The failure to warn may constitute a design defect. (*Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218, 1230 [63 Cal.Rptr.2d 422].) "The rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." (*Anderson v. Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987, 1002 [281 Cal.Rptr. 528, 810 P.2d 549].)

Gonzalez's separate statement contains the following facts relevant to its failure to warn theory: (1) "Autoliv, while in the business of supplying automotive airbags, provides no warnings to the consumer regarding the dangers posed by its airbags" and (2) "Autoliv provides no warnings to consumers despite knowledge that the airbag would be placed in a vehicle under circumstances where the consumer would not have the opportunity to inspect the airbag for defects." These generalized statements do not tend to show that Autoliv "did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." (*Anderson v. Owens-Corning Fiberglas Corp., supra*, 53 Cal.3d at p. 1002.) Although the rules of strict liability place fewer requirements on a plaintiff than negligence (*ibid.*), here Gonzalez fails to identify any particular risk known to Autoliv for which it should have provided a warning.

### C. *Negligence*

 "For the cause of action for strict products liability there is no necessity to show duty or breach of duty but only that the product was defective and that the injury to the plaintiff was caused by that defective condition." (*Brooks v. Eugene Burger Management Corp.* (1989) 215 Cal.App.3d 1611, 1625 [264 Cal.Rptr. 756].) In contrast, to prevail on a negligence claim, Gonzalez must show that Autoliv owed her a legal duty, breached the duty, and that the breach was a proximate or legal cause of her injury. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477 [110 Cal.Rptr.2d 370, 28 P.3d 116].) In the context of a products liability lawsuit, "[u]nder a negligence theory, a plaintiff must also prove 'an additional element, namely, that the defect in the product was due to negligence of the defendant.' " (*Id.* at p. 479.)

Gonzalez does not identify a specific breach of Autoliv's duty of care and therefore fails to support her claim for negligence sufficient to withstand summary judgment. When she amended her complaint to name Autoliv as a Doe defendant, she did not identify any specific negligent conduct by Autoliv that caused her injury, and her separate statement similarly fails to provide facts supporting a specific breach of a duty of care.

### D. *Breach of Warranty*

Gonzalez abandoned her breach of express and implied warranties when she stated "Plaintiff concedes no opposition to the motion as . . . to the third cause of action for breach of express and implied warranties, and consents to the dismissal of this cause of action."

### E. *Trial Court's Ruling*

We have reviewed the judgment de novo as required for a ruling granting summary judgment. (*Wachovia Bank v. Lifetime Industries, Inc.* (2006) 145 Cal.App.4th 1039, 1049 [52 Cal.Rptr.3d 168].) Therefore, appellant's contentions that the court improperly weighed evidence, and that the court failed to consider appellant's objections to the proposed judgment which respondents allegedly improperly submitted ex parte are moot. Even if we were to assume the court erred in these respects, such errors do not affect our review of the judgment.

### F. *Denial of Continuance*

Gonzalez argues that the court should have allowed her a continuance to complete discovery. She claims she was in the process of gathering evidence related to "Respondent's 'substantial participation in the overall manufacturing process' of the 'airbag system' . . . ." This alleged evidence is relevant only to whether Autoliv may be held liable as a component parts manufacturer. Because Autoliv has not demonstrated the applicability of this defense as a matter of law, whether Gonzalez can gather more evidence on the issue is irrelevant. For similar reasons, Gonzalez's request to supplement the record on appeal and her request that this court take judicial notice of additional evidence are denied.[5]

---

[5] Appellant's request for judicial notice filed May 10, 2007, is denied. Contrary to appellant's argument, the deposition testimony for which appellant requests judicial notice is neither (1) a record of a court nor (2) a fact capable of immediate and accurate determination by a court.

## DISPOSITION

The judgment is reversed. The trial court is directed to enter an order granting Autoliv's motion for summary adjudication of Gonzalez's causes of action for negligent products liability and breach of express or implied warranties. Gonzalez is entitled to costs.

Rubin, J., and Boland, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 14, 2007, S157173.