**In re TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**

This document relates to:

All personal liability/wrong death cases.

Case No. 8:10ML 02151 JVS (FMOx).

United States District Court, C.D. California.

Dec. 9, 2010.

Andrea Bierstein, Clinton B. Fisher, Jayne Conroy, Mitchell M. Breit, Paul J. Hanly, Jr., Thomas I. Sheridan, III, Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP, Michael A. London, Douglas

& London, Chaim B. Book, Moskowitz Book & Walsh, LLP, Patrick J. Sheehan, Joe R. Whatley, Jr., Edith M. Kallas, Shujah A. Awan, Whatley Drake & Kallas LLC, Hunter J. Shkolnik, Reingold Valet Rheingold Shkolnik & McCartney, Anita Magdalena Jaskot, Robert Michael Brill, Law Offices of Robert M. Brill, Ted Trief, Arlene Stevens, Trief & Olk, Jeremy Nathan Nash, Jill Sharyn Abrams, Orin Robert Kurtz, Abbey Spanier Rodd & Abrams, LLP, Wendy R. Fleishman, Lieff Cabraser Heimann & Bernstein, LLP, New York, NY, Daniel H. Chang, Diversity Law Group APC, Edward Wonkyu Choi, Choi & Associates Law Offices, Gretchen M. Nelson, Kreindler & Kreindler LLP, Thomas Vincent Girardi, Girardi & Keese, Dana B. Taschner, Lanier Law Firm, Marc M. Seltzer, Ryan C. Kirkpatrick, Steven G. Sklaver, Susman Godfrey LLP, Brian R. Strange, Gretchen Carpenter, John Peter Ohanesian, Strange and Carpenter, Lionel Zevi Glancy, Michael M. Goldberg, Glancy Binkow & Goldberg LLP, Mark John Geragos, Shelley Kaufman, Tamar G. Arminak, Geragos & Geragos, Lee M. Gordon, Elaine T. Byszewski, Hagens Berman Sobol Shapiro LLP, Edward A. Woods, Eric M. George, Michael A. Bowse, Browne Woods George LLP, Joel E. Elkins, Jordan L. Lurie, Weiss and Lurie, Christopher M. Burke, Hal D. Cunningham, Scott & Scott LLP, Jerome L. Ringler, Paul Alvarez, Paul G. Szumiak, Thomas A. Kearney, Ringler Kearney Alvare, Roger A. Cerda, Alston & Bird LLP, Los Angeles, CA, David C. Wright, Jae Kook Kim, Kristy M. Arevalo, Richard D. McCune, Jr., McCune Wright LLP, Redlands, CA, Derek Yeats Brandt, Simmons Browder Gianaris Angelides & Barnerd LLC, East Alton, IL, Peter J. Cambs, Jordan Lucas Chaikin, Bonita Springs, FL, Fred R. Rosenthal, Lisa M. Hasselman, Steve W. Berman, Barbara M. Mahoney, Hagens Berman Sobol Shapiro LLP, Rachel S. Black, Susman Godfrey LLP, Seattle, WA, Behram V. Parekh, Heather Marie Peterson, Michael L. Kelly, Kirtland and Packard, El Segundo, CA, Ben Barnow, Barnow & Associates PC, Kenneth A. Wexler, Wexler Wallace LLP, Aaron J. Bryant, The Bryant Law Group, Chicago, IL, Gene J. Stonebarger, Stonebarger Law, APC, Folsom, CA, David M. Arbogast, Jeffrey K. Berns, Arbogast & Berns LLP, Woodland Hills, CA, H. Scott Leviant, Ira R. Spiro, Spiro Moss LLP, Los Angeles, CA, Mark P. Robinson, Jr., Daniel S. Robinson, Karren Schaeffer, Michelle M. West, Scot D. Wilson, Robinson Calcagnie & Robinson, James B. Hardin, Adam T. Hoover, Marc G. Reich, Reich Radcliffe & Kuttler LLP, Newport Beach, CA, Thomas Joseph O'Reardon, II, Timothy G. Blood, Blood Hurst & O'Reardon LLP, Samuel M. Ward, Stephen R. Basser, Barrack Rodos & Bacine, Alan M. Mansfield, The Consumer Law Group, Daniel J. Mulligan, Thomas A. Jenkins, Jenkins Mulligan & Gabriel LLP, Georgiy B. Lyudyno, Ronald A. Marron, Ronald A. Marron Law Offices APLC, James Robert Hail, John A. Lowther, IV, William James Doyle, II, Doyle Lowther, San Diego, CA, Daniel E. Becnel, Jr., Jennifer L. Crose, June Anne Oswald, Darryl James Becnel, Salvadore Christina, Jr., Becnel Law Firm LLC, Reserve, LA, Diane Kay Zink, Attorney at Law, Robert M. Becnel, Law Offices of Robert M. Becnel, Christopher Devon Becnel, Becnel Law Firm, LLC, Laplace, LA, Camilo Kossy Salas, III, Salas LC, Cayce Christian Peterson, Hugh Palmer Lambert, Linda Jane Nelson, Lambert & Nelson, Matthew B Moreland, Matthew B. Moreland, Attorney at Law, Lawrence J. Centola, III, Scott R. Bickford, Martzell & Bickford, Patrick J. O'Cain, McGlinchey Stafford, PLLC, Stephen J. Herman, Herman Gerel LLP, Dawn M. Barrios, Barrios Kingsdorf & Casteis, New Orleans, LA, John Francis Nevares, John F. Nevares Attorney at Law, Ricardo L. Ortiz–Colon,

Fiddler, Gonzalez & Rodriguez, San Juan, PR, Lance August Harke, Harke & Clasby, John Hasan Ruiz, Joseph Lawrence McGuinness, Miami, FL, J. Andrew Meyer, Tamra Carsten Givens, Morgan & Morgan, PA, Tampa, FL, Scott W. Weinstein, Morgan & Morgan PA, Ft. Myers, FL, Andres A. Alonso, Jerrold S. Parker, Melanie H. Muhlstock, David Bruce Krangle, Great Neck, NY, Benjamin L. Bailey, Eric B. Snyder, Robert P. Lorea, Rodney Arthur Smith, Bailey & Glasser LLP, Edgar F. Heiskell, III, Edgar F. Heiskell Attorney at Law, Harry F. Bell, Jr., The Bell Law Firm, Charleston, WV, Mark S. Baumkel, Bingham Farms, MI, Gerarld J. Rodos, Jeffrey B. Gittleman, Mark R. Rosen, Leonard Barrack, Lisa M. Lamb, Barrack Rodos and Bacine, Jeffrey L. Osterwise, Jon J. Lambiras, Sherrie R. Savett, Berger & Montague PC, Larry Pitt, Larry Pitt & Associates PC, Brian J. McCormick, Jr., Sheller PC, Leonard V. Fodera, Louis Todd Silverman, Michael Phillip Lalli, Silverman & Fodera PC, Arnold Levin, Daniel C. Levin, Levin Fishbein Sedran & Berman, Philadelphia, PA, Arthur Camden Lewis, Keith M. Babcock, John S. Simmons, Lewis & Babcock LLP, Columbia, SC, Thomas J. Murray, Thomas J Murray & Associates Inc., James L. Murray, John T. Murray, Dennis E. Murray, Jr., Margaret M. Murray, Murray & Murray, Sandusky, OH, Elizabeth Joan Cabraser, Nimish R. Desai, Robert J. Nelson, Todd A. Walburg, Lieff Cabraser Heimann and Bernstein LLP, Rosemary M. Rivas, Tracy Tien, Finkelstein Thompson LLP, Derek G. Howard, Gilmur R. Murray, Brad Yamauchi, Jack W. Lee, Minami Tamaki LLP, Cadio Zirpoli, Guido Saveri, Melissa C. Shapiro, R. Alexander Saveri, Saveri & Saveri Inc., San Francisco, CA, Christopher David Stock, Robert Alan Steinberg, Stanley M. Chesley, Wilbert Benjamin Markovits, Waite Schneider Bayless & Chesley, Cincinnati, OH, James E Cecchi, Lindsey H. Taylor, Carella Byrne Bain Gilfillan Cecchi Stewart and Olstein, Roseland, NJ, Charles T. Lester, Jr., Eric C. Deters, Eric C. Deters & Associates PSC, Independence, KY, Ralph K. Phalen, Ralph K. Phalen Law PC, Jose M. Bautista, Robert C. Sullivan, Sullivan Bautista Morgan Allen & Chronic LLC, Shawn Gayland Foster, Davis, Bethune & Jones, LLC, Bradley D. Kuhlman, Chad Cameron Lucas, Kuhlman Law Firm, LLC, Kansas City, MO, W. Mark Lanier, The Lanier Law Firm, Fletcher V. Trammell, Bailey Perrin Bailey, Robert S. Safi, Susman Godfrey LLP, Edward Morgan Carstarphen, III, Ellis Carstarphen et al., Houston, TX, Donald C. Coggins, Jr., John Belton White, Jr., Harrison White Smith and Coggins, Spartanburg, SC, Mark J. Tamblyn, Neha Duggal, Wexler Wallace LLP, C. Brooks Cutter, Stuart C. Talley, Kershaw Cutter & Ratinoff, Sacramento, CA, Bruce W. Steckler, Denyse F. Clancy, Renee M. Melancon, Baron & Budd PC, Dallas, TX, Jennifer K. Berg, Baron & Budd PC, Beverly Hills, CA, Laura L. Singletary, Mary Nell Bennett, Richard Joseph Arsenault, James R. Whaley, John Randall Whaleym, Michael S. Koch, Neblett Beard & Arsenault, Alexandria, LA, John R. Climaco, Patrick G. Warner, Climaco Lefkowitz Peca Wilcox and Garofoli, Frank E. Piscitelli, Jr., Frank E. Piscitelli Co. LLPA, D. Scott Kalish, Frank E. Piscitelli Jr., James L. Deese, Cleveland, OH, Brian W. Smith, Smith & Vanture LLP, West Palm Beach, FL, Thomas D. Mauriello, Mauriello Law Firm, San Clemente, CA, W. Daniel Miles, III, Timothy R. Fiedler, Beasley Allen Crow Methvin Portis & Miles PC, Montgomery, AL, Gordon M. Fauth, Jr., Litigation Law Group, Alameda, CA, Amy M. Wilkins, Robert B. Carey, Hagens Berman Sobol Shapiro LLP, Phoenix, AZ, Leif Garrison, Carey Law Firm, Colorado Springs, CO, Jerry K. Cimmet, Jerry K. Cimmet Law Offices, San Mateo, CA, John M. Kelson, John M.

Kelson Law Office, Oakland, CA, J. Gerard Stranch, IV, Joe P. Leniski, Michael G. Stewart, Steven J. Simerlein, Branstetter Stranch & Jennings PLLC, Jonathan P. Farmer, Jones Hawkins & Farmer PLC, Nashville, TN, Amanda M. Williams, Daniel E. Gustafson, Karla M. Gluek, Gustafson Gluek PLLC, Charles S Zimmerman, Zimmerman Reed PLLP, Robert K. Shelquist, Yvonne M. Flaherty, Lockridge Grindal Nauen PLLP, Minneapolis, MN, James E. Carter, James E. Carter and Associates, LLC, Savannah, GA, Jon E. Ingram, Jr., Thomas W. Tucker, Tucker Everitt Long Brewton & Lanier PC, Augusta, GA, Doris A. Kim, Mark K. Gray, Matthew L. White, Franklin Gray & White, Gary M. Weiss, Joseph Allan Cobb, Weiss & Cobb Attorneys at Law, Louisville, KY, Frank Piscitelli, Mony Financial Services, Purchase, NY, J. Burton Leblanc, IV, Baron & Budd PC, Baton Rouge, LA, Russell A. Wood, Wood Law Office, P.A., Russellville, AR, Douglas Scott Lyons, Lyons & Farrar PA, Phillip Timothy Howard, Howard & Associates PA, Tallahassee, FL, Norwood Sherman Wilner, Wilner Block PA, Jacksonville, FL, Howard Weil Rubinstein, Law Office of Howard W. Rubinstein, Aspen, CO, Bryan August Pfleeger, Ronald J. Favre, Waldon Michael Hingle, Michael Hingle & Associates, Inc., Slidell, LA, Brian Nolan Mazzola, Law Offices of Brian N. Mazzola PLLC, Beaumont, TX, Dianne M. Nast, Erin C. Burns, Roda & Nast, Lancaster, PA, William A. Riback, William Riback LLC, Haddonfield, NJ, Delana S. Sanders, Justin A. Sanders, The Sanders Law Firm, Covington, KY, Kenneth S. Canfield, Ralph I. Knowles, Robert E. Sanders, Robert E. Shields, W. Matthew Nakajima, Doffermyre, Shields, Canfield & Knowles, LLC, Atlanta, GA, David Pastor, Gilman and Pastor LLP, Patrick T. Jones, Peter J. Schneider, Cooley, Manion, Moore & Jones, PC, Howard Friedman, Law Offices of Howard Friedman, P.C., Boston, MA, Thomas E. Clary, III, Glassman Edwards Wade & Wyatt, P.C., Memphis, TN, Patricia Ann Meester, Franklin D. Azar & Associates PC, Pueblo, CO, Franklin D. Azar, Jason B. Wesoky, Nathan Axvig, Franklin D. Azar & Associates PC, Aurora, CO, Philip Burton Green, Kailua–Kona, HI, William G. Azar, Azar & Schlehofer, P.C., Anchorage, AK, Anthony Martin Urie, Shoreline, WA, Joseph W. Price, Snell & Wilmer, Costa Mesa, CA, Stacey Tjon Bossart, Solberg Stewart Miller and Tjon, Fargo, ND, Martha K. Wivell, Sheller PC, Cook, MN, Sharon L. Van Dyck. Van Dyck Law Firm, PLLC, St. Louis Park, MN, Kevin Bruce Love, Criden & Love PA, South Miami, FL, Jason Saul Remer, Remer & Georges–Pierre PLLC, North Miami, FL, Garrett D. Blanchfield Jr., Roberta A. Yard, Reinhardt Wendorf and Blanchfield, Gino F. Battisi, Foley and Mansfield PLLP, Joseph V. Neill, St. Paul, MN, Andrew E. Bederman, Greenberg and Bederman LLP, Silver Spring, MD, Benjamin F. Johns, Joseph G. Sauder, Matthew D. Schelkopf, Chimicles & Tikellis, LLP, Haverford, PA, Charles A. Fiore, Williamstown, NJ, Francis Christopher Porada, Berenbaum Weinshienk PC, Denver, CO, Ann E. Brown–Graff, Brad J. Brady, Larry D. Helvey, Matthew L. Preston, Brady & O'Shea PC, Cedar Rapids, IA, Christopher P. Welsh, Welsh Welsh Law Firm, Omaha, NE, Donald H. Slavik, Habush Habush & Rottier SC, Milwaukee, WI, Fred Schultz, Greene, Schultz Law Firm, Bloomington, IN, William A. Cohan, William A. Cohan Law Offices, Rancho Santa Fe, CA, James C. Shah, Shepherd Finkelman Miller & Shah LLP, Media, PA, William A. Riback, William Riback LLC, Haddonfield, NJ, B. Keith Williams, James R. Stocks, Lannom & Williams, Lebanon, TN, Jud Patterson, Luxon & Patterson, Richmond, KY, Ronald Lee Burdge, Burdge Law Office, Elizabeth Ahern Wells, Dayton, OH, Lucien C. Gwin,

III, Gwin, Lewis & Punches, Natchez, MS, for Plaintiffs.

Andrew B. Cooke, Flaherty Sensabaugh & Bonasso, Rebecca A. Betts, David B. Thomas, Nicholas S. Johnson, Allen Guthrie McHugh and Thomas, Elizabeth L. Taylor, Flaherty Sensabaugh & Bonasso, Charleston, WV, Anne O. Hanna, Vincent Galvin, Jr., Bowman and Brooke LLP, San Jose, CA, Craig Carpenito, Judith Anna Amorosa, Karl Geercken, Kristin Ann Meister, Matthew Carl Decker, Alston & Bird, LLP, New York, NY, Cari K. Dawson, Derin B. Dickerson, Kyle G.A. Wallace, Alston & Bird LLP, Andrew T. Bayman, King and Spalding LLP, Kara Kennedy, Scott Austin Elder, Alston & Bird, LLP, Harold E. Franklin, Jr., Atlanta, GA, Clem C. Trischler, James F. Marrion, Pietragallo Gordon Alfano Bosick & Raspanti, LLP, Paula J. Allan, Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, Daniel W. Olivas, J. Randolph Bibb, Jr., Lewis, King, Krieg & Waldrop, P.C., Donna L. Roberts, Stephen H. Price, Stites & Harbison, PLLC, Nashville, TN, Gregory A. Harrison, Andrew R. Kwiatkowski, Jeffrey P. Hinebaugh, Dinsmore & Shohl, Chad Michael Sizemore, Jason A. Golden, Kelly Maria Carbetta Scandy, Kelly C. Scandy, Kimberly Vanover Riley, Montgomery Rennie & Jonson, Cincinnati, OH, James Karl Viehman, Hartline Dacus et al., Charles Glen Morris, Darren McCarty, Alston & Bird LLP, Dallas, TX, John D. Arya, Lisa Gilford, Rachel Aleeza Rappaport, Loeb & Loeb LLP, Roger A. Cerda, Stephanie Ann Jones, Alston & Bird LLP, James J. Yukevich, Raymond H. Hua, Alexander G. Calfo, Yukevich Calfo and Cavanaugh, Los Angeles, CA, Kathryn Ashley Meyers, Michael Ross Tein, Lewis Tein PL, Coconut Grove, FL, Mary Michelle Kranzow, William Francis Auther Bowman & Brooke LLP, Phoenix, AZ, Patrick Darrow Wilson, Edwin L. Lowther, Jr., Wright Lindsey and Jennings, Little Rock, AR, Paul J. Osowski, Nelson Mullins Riley & Scarborough, LLP, Charlotte, NC, Ross W. Johnson, Faegre & Benson LLP, Des Moines, IA, Steven A. McKelvey, William H. Latham, Nelson Mullins Riley & Scarborough LLP, Angela Gilbert Strickland, Pamela J. Roberts, Bowman & Brooke LLP, Columbia, SC, Todd E. Kennedy, Lionel, Sawyer & Collins, Greg W. Marsh, Law Offices of Greg W. Marsh, Todd E. Kennedy, Lionel, Sawyer & Collins, Las Vegas, NV, C. Brandon Wisoff, Douglas R. Young, Farella Braun and Martel LLP, San Francisco, CA, Bridget M. Ahmann, Demoya R. Gordon, Faegre & Benson LLP, Bard D. Borkon, Douglas L. Pfeifer, Bowman & Brooke LLP, Carrie L. Hund, Bassford Remele, PA, Minneapolis, MN, Charles A. Getto, McAnany, Van Cleave & Phillips, P.A., Holly P. Smith, Shook Hardy & Bacon LLP, Kansas City, MO, Colvin Gamble Norwood, Jr., Henri Wolbrette, III, Jose L. Barro, III, Mark N. Bodin, Patrick J. O'Cain, Lorraine Perkins McInnis, McGlinchey Stafford Lang, PLLC, New Orleans, LA, Dennis P. Ziemba, Edward A. Gray, Eckert Seamans Cherin & Mellott LLC, Philadelphia, PA, David L. Ayers, Todd Jefferson Hartley, Jennifer Ann Rogers, Watkins & Eager, David Lawrence Ayers, Jackson, MS, David T. Schaefer, Dinsmore & Shohl Louisville, KY, De Martenson, Huie Fernambucq & Stewart LLP, Birmingham, AL, Joel A. Dewey, Kelly M. Marzullo, DLA Piper U.S. LLP, Baltimore, MD, Jonathan Hale Claydon, Jose A. Isasi, Jose Antonio Isasi II, Greenberg Traurig, LLP, Charles Scott Ofstein, Donohue Brown Mathewson & Smyth LLC, Gerald Cleary, Pappas Hubbard O'Connor Fildes Secaras, PC, Jose Antonio Isasi, II, Greenberg Traurig, LLP, Mark Howard Boyle, Donohue Brown Mathewson & Smyth LLC, Chicago, IL, Karoline E. Jackson, Michael Rosiello, T. Joseph Wendt, Barnes & Thornburg LLP, Nicholas C. Pappas, Richelle M. Harris, Frost Brown Todd LLC, India-

**1216**

napolis, IN, Lee A. Rosenthal, Dinsmore & Shohl, Lexington, KY, Ricardo L. Ortiz–Colon, Roberto A. Camara–Fuertes, Fiddler, Gonzalez & Rodriguez, San Juan, PR, Sarah C. McBride, Lewis, King, Krieg & Waldrop, P.C., Knoxville, TN, David J. Williams, Stoel Rives, Salt Lake City, UT, John A.K. Grunert, James M. Campbell, Campbell, Campbell, Edwards & Conroy, P.C., Boston, MA, John W. Knottnerus, Philip A. Rush, Martin Bischoff Templeton Langslet & Hoffman, Portland, OR, Regina M. Rodriguez, Faegre & Benson, LLP, Denver, CO, Robert L. Blank, Jared Smith, Rumberger, Kirk & Caldwell, PA, Tampa, FL, Steven Robert Kramer, Eckert, Seamans, Cherin & Mellott LLC, White Plains, NY, Thomas P. Branigan, Bowman & Brooke, Troy, MI, B. Timothy Durick, Pearce & Durick, Bismarck, ND, Bruce S. Terlep, David J. Riski, Swanson, Martin & Bell, LLP, Lisle, IL, Gene R. Ward, Demars Hornblower Manning & Ward, Corpus Christi, TX, John B. Thorsness, Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC, Anchorage, AK, Jon Barry Waldorf, Mark W. Skanes, The Rose Law Firm, PLLC, Albany, NY, Julian G. Senior, O'Hagan Spencer, LLP, Manhattan Beach, CA, Nicholas Thomas Moraites, William Dean Ledoux, Jr., Eckert Seamans Cherin & Mellott LLC, Washington, DC, Sheree A. Kon–Herrera, Fukunaga Matayoshi Hershey Ching & Kop, Honolulu, HI, Tracy M. Jenks, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, NM, William E. Schaefer, Law Office of John P. Hendrzak, Center Valley, PA, for Defendants.

ORDER GRANTING IN PART AND DENYING IN PART TOYOTA'S MOTIONS TO DISMISS

JAMES V. SELNA, District Judge.

Table of Contents

I. *Factual Allegations* .................................................................1217
 A. *Roberts* .................................................................1217
 B. *Scott* .................................................................1218
 C. *Akamike* .................................................................1218
 D. *Riegel Breit* .................................................................1218

II. *Legal Standard* .................................................................1218

III. *Plaintiffs' Products Liability and Negligence Claims* .................................................................1219
 A. *Products Liability Claims* .................................................................1219
 1. *Design Defects* .................................................................1220
 2. *Warning Defect* .................................................................1221
 3. *Manufacturing Defects* .................................................................1222
 B. *Negligence* .................................................................1223
 C. *Conclusion for Products Liability and Negligence Claims* .................................................................1224

IV. *Breach of Express and Implied Warranties* .................................................................1224

V. *Breach of the Covenant of Good Faith and Fair Dealing* .................................................................1225

VI. *Fraudulent Concealment, Intentional & Negligent Misrepresentation, and*
 *Rule 9(b)* .................................................................1225
 A. *Rule 9(b)* .................................................................1225
 1. *Legal Standard* .................................................................1225
 2. *Analysis* .................................................................1225
 B. *Fraudulent Concealment* .................................................................1226
 1. *Legal Standard* .................................................................1226
 2. *Analysis* .................................................................1226

 a. *Exclusive Knowledge* .........................................1226
 b. *Concealment of Material Facts*.................................1227
 c. *Partial Representations* ......................................1228
 d. *Trust and Confidence* ........................................1229
 e. *Matters of Public Safety*.....................................1230
 C. *Misrepresentation* ..............................................1230

VII. *Conclusion*...........................................................1230

This multi-district litigation arises out of Plaintiffs' purchase of vehicles designed, manufactured, distributed, marketed and sold by Defendants Toyota Motor Corporation dba Toyota Motor North America, Inc. ("TMC"), and its subsidiary, Toyota Motor Sales, U.S.A., Inc. ("TMS") (collectively, "Toyota" or "Defendants"). Presently before the Court are Toyota's Motions to Dismiss claims asserted by Plaintiffs claiming personal injury and/or wrongful death as a result of events of sudden, unintended acceleration ("SUA") of Toyota vehicles.

This ruling applies to all of Toyota's Motions to Dismiss (specifically, to Docket Nos. 335, 377, 409, 489, 495), unless otherwise noted. It also applies to the Motion to Dismiss filed by Defendant The Hertz Corporation (Docket No. 372), which incorporates Toyota's Motion to Dismiss (Docket No. 335) as to the negligence claim. Because the substance of all of the listed motions is the same, for efficiency, the Court cites only to Defendants' Memorandum of Points and Authorities (Docket No.

335) ("Defs.' Mem."). Similarly, to the extent the substance of all exemplar complaints cited by Toyota is the same, the Court cites only to the *Roberts* complaint in the discussion sections that follow.

## I. *Factual Allegations*

In support of its Motions to Dismiss certain personal injury/wrongful death complaints, Toyota cites to four exemplar complaints.[1] The complaints collectively raise the following claims under California law: (1) negligence, (2) products liability, (3) breach of express and implied warranties, and (4) fraudulent concealment. The individual factual allegations contained therein are summarized below. As it must pursuant to the relevant legal standard, for the purposes of Toyota's Motions to Dismiss, the Court accepts as true all well-pled factual allegations set forth in the complaints.

### A. *Roberts*

Plaintiff Omar Roberts ("Roberts") is a resident of Brooklyn, New York. (¶ 24.)[2]

---

**1.** The Court initially contemplated Toyota filing only two motions per issue, with the ruling on those cases to provide guidance on all other cases raising the same issue. (Docket No. 193 at 8.) However, Toyota has filed three main Motions to Dismiss that cite to four underlying complaints: *Roberts* FAC, *Scott*, *Akamike* FAC, and *Riegel Breit* (Docket No. 335, applicable to all personal injury/wrongful death cases; Docket No. 377, applicable to one case; and Docket No. 409, applicable to six cases.) In addition, Toyota has filed additional follow-on motions adopting its earlier briefing. (Docket Nos. 489, 495; *see also* Docket No. 499 (Amended Notice of Motion with updated chart identifying actions that

have been voluntarily dismissed, complaints that have been amended, new actions that have been filed or transferred into the MDL, and actions that are expected to be transferred no later than the date of the hearing on the Motions to Dismiss).) While this structure of motions covering various overlapping complaints is not what the Court envisioned, the Court has nonetheless considered all complaints cited by Toyota and rules on all of the outstanding motions.

**2.** Here and elsewhere, citations to a complaint are citations to the operative complaint filed by the Plaintiff being discussed.

Roberts was the owner of a 2009 Toyota Camry. (¶ 26.) On October 7, 2008, Roberts was driving his Toyota Camry at a safe rate of speed when the vehicle "suddenly accelerated at a high rate of speed and he was unable to stop the vehicle by braking." (¶ 27.) Roberts' car struck the car in front of him, and as a result of the collision, Roberts suffered numerous traumatic injuries, including broken legs and torn tendons. (¶¶ 27–28.) Residual effects of the accident continue to impact Roberts' daily life, including his mobility. (¶ 28.) At all relevant times, Roberts was unaware of his vehicle's hidden defects. (¶ 26.)

### B. *Scott*

Plaintiffs Saundra Hill Scott ("Mrs. Scott") and Raleigh Scott ("Mr. Scott"), husband and wife, reside in Lee County, Florida. (¶ 12.) On April 12, 2010, while Mrs. Scott was driving her 2004 Toyota Prius in Miami Gardens, Florida, the Prius suddenly and unexpectedly accelerated. (¶¶ 19–20.) Mrs. Scott attempted to control the sudden acceleration by stepping on the brake pedal. (¶ 20.) However, the vehicle would not stop and instead accelerated through four lanes of traffic, and collided with a fence and a tree. (*Id.*) The Florida Traffic Crash Report associated with the incident read, "Driver 1 stated the accelerator of the vehicle got stuck and she could not control the vehicle." (*Id.*) The crash resulted in injury and damage to Mrs. Scott. (¶ 21.) Toyota never provided a warning to Mrs. Scott regarding the dangerous propensities of her vehicle. (*Id.*)

### C. *Akamike*

Plaintiff Romanus Akamike ("Akamike") is a resident of Texas. (¶ 1.) Akamike purchased a 2007 Toyota Camry, alleging that at the time of purchase, he thought "he was investing in a safe and reliable vehicle" and that he was "unaware of the vehicle's concealed and potentially lethal defects of which Toyota was or should have been aware." (¶ 16.) On December 15, 2009, Akamike was driving his Toyota Camry when his car "suddenly accelerated, causing the car to flip several times before coming to a stop." (¶ 17.) Akamike suffered general bruising over his entire body, left shoulder pain, and a large subdural hematoma. (¶ 19.) The day after the accident, Akamike "was found unresponsive" and transported by ambulance to a nearby medical center, where he was diagnosed as having a head injury. He was taken by helicopter to a different facility, where he had brain surgery and was discharged on December 19, 2009.(*Id.*) Since the accident, Akamike alleges that he has undergone brain surgery and physical therapy as a result of his injuries. (*Id.*)

### D. *Riegel Breit*

Plaintiff Suzanne Riegel Breit ("Riegel Breit") is a resident of Virginia and is the administrator for the estate of Decedent Wava Joy Riegel ("Riegel"). On September 24, 2009, Riegel was driving her 2010 Toyota Camry in an intended and foreseeable manner when it suddenly and unexpectedly accelerated. (¶ 19.) The vehicle collided with a tree, resulting in fatal injuries to Riegel. (¶ 20.) Riegel Breit alleges that at no time prior to September 24, 2009 was Riegel warned of the dangerous propensities within Riegel's Camry. (¶ 21.)

### II. *Legal Standard*

To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court recently discussed this standard and the applicable case law in its Order Granting in Part and Denying in Part Toyota's Motion to Dismiss and Motion to Strike the

Economic Loss Plaintiffs' Master Consolidated Complaint (Docket No. 510 at 32) ("Economic Loss Order"). The Court adopts that discussion here.

### III. *Plaintiffs' Products Liability and Negligence Claims*

Toyota argues that Plaintiffs' products liability and negligence claims are deficient under *Twombly* and *Iqbal* because they fail to offer specific allegations of an actual defect in Toyota's electronic throttle control system ("ETCS" or "ETCS-i"). (Defs.' Mem. at 7.) According to Toyota, Plaintiffs do not identify or describe any alleged defect in the ETCS-i, or sufficiently allege that the ETCS-i defect was a substantial factor in causing any of the accidents that led to Plaintiffs' injuries. (Defs.' Mem. at 8.) Instead, Plaintiffs rely on conclusory allegations regarding past incidents of SUA events compiled from media reports, NHTSA databases, and third party complaints. (Defs.' Mem. at 7.) In Toyota's view, because products liability and negligence claims must be plausible, Plaintiffs' failure to identify "what specific defect, if any, is causing the alleged [SUA] events" renders their allegations insufficient. (Defs.' Mem. at 11.) Thus, Toyota reasons, Plaintiffs' products liability and negligence claims should be dismissed because Plaintiffs have "concluded, not shown, that the subject accidents were caused by a specific defect in the ETCS-i." (Defs.' Mem. at 14.) Toyota concludes, therefore, that "[i]f the holdings of *Iqbal* and *Twombly* have any purpose, it is that the Toyota Defendants do not have to guess or speculate as to Plaintiffs' allegation of the cause of the alleged acceleration events." (Defs.' Reply at 2.)

Plaintiffs respond that they properly allege that their Toyota vehicles are defective because they suddenly accelerate on their own and lack a brake override system to prevent, mitigate, or stop an SUA event. (Pltfs.' Opp'n at 5.) Plaintiffs allege that their vehicles failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and Plaintiffs argue that they are not required to plead, let alone prove at trial, a more specific "defect" to prevail under California design defect law. (Pltfs.' Opp'n at 5–6.) Moreover, under *Twombly* and *Iqbal*, Plaintiffs contend that their claims suffice because " 'the very nature of a products liability action' makes it difficult 'to know with specificity before discovery what was the likely source of the defect,' or 'to pinpoint a specific source of a defect.' " (Pltfs.' Opp'n at 8 (quoting *Bailey v. Janssen Pharmaceutica, Inc.*, 288 Fed.Appx. 597, 605–07 (11th Cir.2008)).) Thus, Plaintiffs argue that by "detailing the product's problem, the consequences of that problem," alleging that Plaintiffs "used the product," and the "consequences that occurred[,]" their allegations "are more than sufficient" under *Iqbal* to "nudge claims across the line from conceivable to plausible." (Pltfs.' Opp'n at 8 (internal quotation marks and citation omitted).) Plaintiffs describe in detail the SUA problem with Toyota vehicles, the alleged causes of SUA, Plaintiffs' use of the products in an ordinary and reasonably foreseeable manner, and the adverse consequences of that use. (Pltfs.' Opp'n at 11.) For these reasons, Plaintiffs argue that Toyota's motion should be denied.

### A. *Products Liability Claims*

 "A manufacturer may be held strictly liable for placing a defective product on the market if the plaintiff's injury results from a reasonably foreseeable use of the product." *Saller v. Crown Cork & Seal Co., Inc.*, 187 Cal.App.4th 1220, 1231, 115 Cal.Rptr.3d 151 (2010). California recognizes strict liability for three types of products liability claims: design defects,

manufacturing defects, and warning defects. *Id.*

Here, each exemplar complaint asserts products liability claims for design and warning defects. It appears that the *Scott* and *Riegel Breit* complaints also assert claims for manufacturing defects. The Court addresses the sufficiency of the pleadings under each theory of liability.

### 1. *Design Defects*

■ "Defective design may be established under two theories: (1) the consumer expectations test, which asks whether the product performed as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner; or (2) the risk/benefit test, which asks whether the benefits of the challenged design outweigh the risk of danger inherent in the design." *Id.* at 1231–32, 115 Cal.Rptr.3d 151. The consumer expectations test is used when " 'the product is one within the common experience of ordinary consumers.' " *Id.* at 1232, 115 Cal.Rptr.3d 151 (quoting *Campbell v. Gen. Motors Corp.*, 32 Cal.3d 112, 127, 184 Cal.Rptr. 891, 649 P.2d 224 (1982)). If the facts do not "permit an inference that the product's performance did not meet minimum safety expectations of its ordinary users," the design defect must be analyzed under the risk-benefit test. *Id.* at 1233, 115 Cal.Rptr.3d 151.

■ To meet the strictures of *Twombly* and *Iqbal,* Plaintiffs should identify which design defect theory is being utilized and allege facts to support that theory. *Lucas v. City of Visalia,* 726 F.Supp.2d 1149, 1155 (E.D.Cal.2010). For example,

under the "consumer expectations test," plaintiff " 'should *describe how* the [product] failed to meet the minimum safety expectations of an ordinary consumer' " of that product. *Id.* (quoting *Altman v. HO Sports Co.,* No. 1:09–cv–1000 AWI SMS, 2009 WL 4163512, at *8 (E.D.Cal. Nov. 19, 2009)) (italics in original). Similarly, under the "risk-benefit test," a plaintiff "should allege that the risks of the design outweigh the benefits, and then "explain how the particular design of the [product] caused [plaintiff] harm"." [3] *Id.* (quoting *Altman,* 2009 WL 4163512, at *8). A bare allegation that the product "suffered from a 'design defect' is an insufficient legal conclusion" under *Twombly* and *Iqbal. Id.*

■ Here, the Court finds that the exemplar complaints allege sufficient facts under both the consumer expectations and risk-benefit tests. For example, the *Roberts* complaint alleges that Plaintiff was "driving at a safe rate of speed" when the "vehicle suddenly accelerated at a high rate of speed." (¶ 27.) Plaintiff was "unable to stop the vehicle by braking" and consequently "struck the car ahead of him," (¶ 27), resulting in numerous injuries including "broken legs and torn tendons." (¶ 28.) Plaintiff further alleges that Toyota vehicles with "the electronic throttle control system … contain design defects that cause sudden and uncontrolled acceleration to speeds of up to 100 miles per hour or more," (¶ 6), and that these vehicles are defective because they experience SUA events and "lack a mechanism, such as a brake override system, to prevent, mitigate, or stop [an SUA] event.[4] (¶ 7.)

---

3. *But see Altman,* 2009 WL 4163512 at *8 (holding that an allegation that the risks outweigh the benefits is unnecessary because defendant bears the ultimate burden of proof, but requiring plaintiff to allege that the design "was a substantial factor in causing his injuries.").

4. Plaintiff alleges that "[a]ll Toyota vehicles" with the ETCS-i system "beginning in Model Year 2002" contain the SUA defect, and that Plaintiff's vehicle was a 2009 Toyota Camry. (¶¶ 1, 6.) Thus, Plaintiff's vehicle was among the allegedly defective vehicles subject to SUA events.

Plaintiff identifies three design defects that cause or contribute to SUA events, including: (1) an inadequate fault detection system (¶ 9), (2) an ETCS system that is "highly susceptible to malfunction caused by various electronic failures, including ... short circuits, software glitches, and electromagnetic interference from outside sources," (¶ 10), and (3) the absence of a brake override system. (¶ 11.) According to Plaintiff, "[t]hese defects alone, or in combination, render certain Toyota vehicles unreasonably dangerous and unable to perform as an ordinary consumer would expect." (¶ 12.) By 2007, Toyota was aware that a brake override system could prevent the SUA defect and "could have easily implemented a brake override system," (¶¶ 13–14), but instead "hid the problem and proposed inadequate and misleading solutions" that led to "numerous fatalities and injuries, including those suffered by Plaintiff." (¶ 20.) Based on the foregoing, Plaintiff brings claims for design defects under the consumer expectations test (¶ 158) and risk-benefit test (¶ 159).

The Court has no trouble discerning sufficient facts in the *Roberts* complaint that support a design-defect claim under the consumer expectations test and the risk-benefit test. Under the consumer expectations test, Toyota vehicles do not meet consumer expectations because they suddenly and unexpectedly accelerate and cannot be stopped upon proper application of the brake pedal, which happened to Plaintiff Roberts and caused his crash and injuries. Similarly, under the risk-benefit test, the ETCS-i system is defective because it causes SUA events owing to an inadequate fault detection system, electronic failures, and the absence of a brake override system, and the risks of SUA are not outweighed by any purported benefits.

Toyota argues that Plaintiffs "fail to identify a defective cause of the alleged acceleration incidents" and, as an issue of "fair notice," Plaintiffs must state "what is allegedly wrong with the vehicles other than conjecture that a brake override system could prevent an occurrence." (Defs.' Reply at 2.) Toyota demands a level of specificity that is not required at the pleadings stage. The defect is identified: Plaintiffs' cars suddenly and unexpectedly accelerate and do not stop upon proper application of the brake pedal. Causes of the defect are identified: an inadequate fault detection system and electronic failures. An alternative design (that allegedly would have prevented the defect from injuring Plaintiffs) is identified: a brake override system. These allegations do more than merely recite the elements required for design defect claims under California law, and plausibly give rise to an entitlement to relief.

Accordingly, Toyota's motion is denied as it pertains to Plaintiffs' allegations of design defects.[5]

### 2. *Warning Defect*

■ Under a "warning defect" theory, "a product may be defective even though it is manufactured or designed flawlessly." *Saller*, 187 Cal.App.4th at 1238, 115 Cal. Rptr.3d 151. Liability under this theory "requires that the manufacturer knows, or should have known, of the danger of the product at the time it is sold or distributed," and that "the plaintiff prove that defendant 'did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the manufacture and distribution.'" *Id.* (quoting *Anderson v. Owens–Corning Fiberglas*

---

**5.** Because the allegations in the other exemplar complaints are similar with respect to design defects, the Court does not analyze them individually.

*Corp.,* 53 Cal.3d 987, 1002–03, 281 Cal. Rptr. 528, 810 P.2d 549 (1991)).

■ Here, the Court finds that the exemplar complaints allege sufficient facts to establish a claim for a "warning defect." For example, the *Roberts* complaint alleges the danger of SUA, (¶ 6), and that "Toyota was aware of the defective nature of the acceleration control and throttle system in its vehicles since at least 2002, but failed to adequately and accurately disclose these facts to Plaintiff, the public, and NHTSA." (¶ 105.) Paragraphs 49 through 78 contain allegations about Toyota's knowledge of the alleged defects, including numerous consumer complaints and investigations by NHTSA. Paragraphs 105 through 125 contain allegations that Toyota concealed the danger of these defects from the public, including hiding reports of SUA and denying that SUA existed. Paragraphs 126 through 129 contain allegations that Toyota tried to cover up the alleged ETCS-i defects by focusing on mechanical problems with the floor mats and sticky pedals. Plaintiff also alleges that he did not know of the dangers of SUA. (¶ 26, 168.)

Taken together, these allegations are sufficient to support a claim under a warning defect theory of liability: the particular risk allegedly known by Toyota was SUA, and that risk was not disclosed to Plaintiff. To the extent that Toyota argues more specificity is required, the Court disagrees.

Accordingly, Toyota's motion is denied as it pertains to Plaintiffs' allegations of warning defects.[6]

### 3. *Manufacturing Defects*

■■ Under a "manufacturing defect" theory, " 'a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line.' " *Lucas,* 726 F.Supp.2d at 1154 (quoting *Barker v. Lull Eng'g Co.,* 20 Cal.3d 413, 429, 143 Cal.Rptr. 225, 573 P.2d 443 (1978)). The "manufacturing defect" theory posits that "a suitable design is in place, but that the manufacturing process has in some way deviated from that design." *In re Coordinated Latex Glove Litig.,* 99 Cal. App.4th 594, 613, 121 Cal.Rptr.2d 301 (2002). To satisfy *Twombly* and *Iqbal,* plaintiffs should "*identify/explain how* the [product] either deviated from [defendant's] intended result/design or *how* the [product] deviated from other seemingly identical [product] models." *Id.* at 1155 (italics in original) (citing *Barker,* 20 Cal.3d at 429, 143 Cal.Rptr. 225, 573 P.2d 443). "A bare allegation that the [product] had 'a manufacturing defect' is an insufficient legal conclusion." *Id.*

■ Here, the Court finds that the *Scott* and *Riegel Breit* complaints do not adequately assert claims for manufacturing defects under *Twombly* and *Iqbal.* For example, the *Scott* complaint alleges that the "ETCS systems and their various components were defectively designed *and manufactured* in that they were highly susceptible to malfunction caused by various electronic failures, including but not limited to short circuits and electromagnetic interference from electromagnetic sources outside the vehicle." (¶ 2 (italics added).) Plaintiff further alleges that "the Subject Prius, which was being used in a reasonably foreseeable manner, failed to perform as an ordinary consumer would have expected, *failed to conform with its manufacturing specifications,* failed to contain adequate warnings, and its design was a substantial factor in causing injuries." (¶ 130 (italics added).) Taken together, these two allegations seemingly allege a manufacturing defect. However,

---

6. Because the allegations in the other exemplar complaints are similar with respect to warning defects, the Court does not analyze them individually.

the *Scott* complaint does not offer any allegations of how the vehicle deviated from Toyota's intended design or other product models. *See Lucas*, 726 F.Supp.2d at 1155. Instead, the *Scott* complaint offers bare allegations of a manufacturing defect, and thus dismissal is warranted.

■ Accordingly, Toyota's motion is granted as it pertains to Scott and Riegel Breit's allegations of manufacturing defects.[7] The dismissal is without prejudice.[8]

\* \* \*

With respect to Plaintiffs' design and warning defect claims, Toyota cannot credibly claim that it does not comprehend Plaintiffs' theory from the pleadings, nor that it is handicapped in responding to the Complaint.

**B. *Negligence***

■ A negligence claim under California law requires plaintiff to allege that defendant "owed [plaintiff] a legal duty, breached the duty, and that the breach was a proximate or legal cause of [plaintiff's] injury." *Gonzalez v. Autoliv ASP, Inc.*, 154 Cal.App.4th 780, 793, 64 Cal. Rptr.3d 908 (2007). "In the context of a products liability lawsuit, '[u]nder a negligence theory, a plaintiff must also prove ... "that the defect in the product was due

to negligence of the defendant." ' " *Id.* (quoting *Merrill v. Navegar, Inc.*, 26 Cal.4th 465, 479, 110 Cal.Rptr.2d 370, 28 P.3d 116 (2001)).

■ Here, Toyota does not specifically challenge any particular element required for a negligence claim. Instead, Toyota broadly attacks the exemplar complaints on the same grounds that it challenged Plaintiffs' products liability claims, namely: Plaintiffs "fail to identify a defective cause of the alleged acceleration incidents," and as an issue of "fair notice" Plaintiffs must state "what is allegedly wrong with the vehicles other than conjecture that a brake override system could prevent an occurrence." (Defs.' Reply at 2.) The Court rejects Toyota's arguments for the reasons previously stated: Plaintiffs identify the alleged defect (i.e., Plaintiffs' cars suddenly and unexpectedly accelerate and do not stop upon proper application of the brake pedal), identify causes of the defect (e.g., an inadequate fault detection system and electronic failures), identify an alternative design that would have prevented the defect from injuring Plaintiffs (i.e., a brake override system), allege that the SUA risk was known by Toyota, and allege that Toyota did not disclose or eliminate the risk to Plaintiffs that culminated in Plaintiffs' injuries.[9]

7. As noted previously, the *Roberts* and *Akamike* complaints do not allege manufacturing defect claims. Because the allegations in the *Riegel Breit* complaint are virtually identical to those in *Scott*, the Court does not analyze them individually. The Court also recognizes that Toyota's Motion to Dismiss is cast in slightly different terms than those granted by the Court. However, because *Twombly* and *Iqbal* are at the forefront of Toyota's motion, and the manufacturing defect claims in the *Scott* and *Riegel Breit* complaints clearly fail to meet *Twombly* and *Iqbal*, the Court grants Toyota's motion.

8. Leave to amend should be granted when amendment would not be futile. *Lucas*, 726 F.Supp.2d at 1153 (citing *Gompper v. VISX,*

*Inc.*, 298 F.3d 893, 898 (9th Cir.2002)). Because it is conceivable that Plaintiffs could allege facts sufficient to support a claim under a manufacturing defects theory of liability, the Court grants leave to amend.

9. *See Merrill*, 26 Cal.4th at 480, 110 Cal. Rptr.2d 370, 28 P.3d 116 (stating that "most of the evidentiary matters relevant to applying the risk/benefit test in strict liability cases are similar to the issues typically presented in a negligent design case," which is "not surprising, because to say that a product was negligently designed is to say it was defective, for purposes of establishing liability under a theory of negligence.") (internal quotation marks and citations omitted).

Accordingly, Toyota's motion is denied as it pertains to Plaintiffs' negligence claims. Because the Court denies Toyota's motion, the Court similarly denies defendant The Hertz Corporation's motion to dismiss Count III of the Izenstark complaint for negligence.[10] (Docket No. 372.)

### C. Conclusion for Products Liability and Negligence Claims

Accordingly, for the foregoing reasons, the Court grants Toyota's Motion to Dismiss the manufacturing defect claims in the *Scott* and *Riegel Breit* complaints, but otherwise holds that Plaintiffs have adequately alleged their products liability and negligence claims. The Plaintiffs in *Scott* and *Riegel Breit* are granted leave to amend.

### IV. Breach of Express and Implied Warranties

The Court's previous rulings regarding the express and implied warranty claims, set forth in the Court's Economic Loss Order, are generally applicable to these same claims asserted by Plaintiffs in the personal injury/wrongful death cases.

In the Economic Loss Order, the Court dismissed with prejudice the express written warranty claims to the extent those claims were premised on defects in design rather than on defects in materials and workmanship. (Economic Loss Order at 57–59.) The remaining express written warranty claims, i.e., those premised on defects in materials and workmanship, are subject to the added requirement that a Plaintiff plead that he or she sought repairs, including in response to the recalls, during the relevant warranty period. (*Id.* at 52–55.) The claims of those Plaintiffs who cannot allege that they sought repairs during the relevant warranty period are dismissed with prejudice. (*Id.*)

Examining the four exemplar complaints, *supra* n. 1, two do not assert express warranty claims. (*See generally Akamike* FAC, *Roberts* FAC.) The two remaining exemplar complaints make only conclusory allegations regarding non-design defects that are insufficient to state an express warranty claim, and make no allegations regarding whether they sought repair during the relevant warranty period. (*See Scott* ¶ 130 (vehicle "failed to conform with its manufacturing specifications"); *Riegel Breit* ¶ 1 (referring to "electronic defects"), ¶ 127 (alleging that the vehicle was "defectively ... manufactured"); *cf. Roberts* FAC ¶¶ 8–11 (making detailed factual allegations regarding "at least three design defects,"[11] including "inadequate fault detections systems," "components [that] are highly susceptible to malfunctions ... such as short circuits, software glitches, and electromagnetic interference," and the "lack of a brake override system"); *Akamike* FAC ¶¶ 8–11 (same).)

The express warranty claims set forth in the exemplar complaints are therefore dismissed without prejudice.

---

**10.** The Hertz Corporation's ("Hertz") motion (Docket No. 372) expressly joined "Section III(A) and Section III(B)" of Toyota's motion, (Hertz Mem. at 5), and thereby limited itself to the issues raised by Toyota's motion: "The reasons for the dismissal of the Izenstark complaint by the Toyota defendants are the same reasons Hertz moves to dismiss the Izenstark complaint." (Hertz Mem. at 6.) Because Hertz does not offer additional grounds for dismissal in its moving papers, Hertz's motion is denied.

**11.** Of course, the allegations regarding the design defects do not state a claim for breach of express warranty. The Court's reference to these factual allegations is merely illustrative of the type of factual allegations necessary to sufficiently plead a claim for breach of express warranty based on defects in material or workmanship.

In the Economic Loss Order, as to the implied warranty claim,[12] the Court rejected a "dangerous instrumentality" argument substantially identical to that raised by Plaintiffs in response to the present Motions, which the Court rejects here as well. (*Id.* at 69–70.) Nevertheless, the Court denied the Motion to Dismiss Plaintiffs' implied warranty claims, notwithstanding the lack of vertical privity, because Plaintiffs have sufficiently pled their third party beneficiary status. (*Id.* at 66–68.)

Here, none of the exemplar complaints set forth any factual allegations regarding the Plaintiffs' third party beneficiary status. As such, the implied warranty claims are dismissed without prejudice.[13]

## V. *Breach of the Covenant of Good Faith and Fair Dealing*

Although at the time of the briefing of the Motions to Dismiss, the parties addressed the viability of a claim for breach of the covenant of good faith and fair dealing ("bad faith claim") under the present facts, upon a review of the current versions of the exemplar complaints to which Defendants' Motions to Dismiss refer, the Court finds no bad faith claim asserted. (*Compare, e.g.,* Compl. ¶¶ 92–98, *Ross, et al. v. Toyota Motor Corp., et al.,* 10–5700 (Docket No. 1) (setting forth bad faith claim) *with Ross* FAC (Docket No. 10) (no bad faith claim asserted).)

Thus, the Court does not analyze the viability of a bad faith claim at this time.

## VI. *Fraudulent Concealment, Intentional & Negligent Misrepresentation, and Rule 9(b)*

### A. *Rule 9(b)*

#### 1. *Legal Standard*

To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), allegations of fraud "must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). The Court recently summarized the case law applicable to Rule 9(b)'s particularity requirement in its Economic Loss Order. (Docket No. 510 at 34–36, 77–78.) The Court adopts that discussion here.

#### 2. *Analysis*

■ Toyota argues that Plaintiffs fail to identify "a single instance where Toyota directed a single material misrepresentation toward a single plaintiff, much less a material misrepresentation made with knowledge of its falsity." (Defs.' Mem. at 28.) However, Plaintiffs' fraud theory is based on fraudulent concealment, not active misrepresentation.[14] None of the exemplar complaints contain claims for misrepresentation or negligent misrepresentation.[15]

12. As they did in response to their Opposition to the Economic Loss Motion to Dismiss, in their Opposition to the present Motions to Dismiss, Plaintiffs indicate the intent to abandon the claim for breach of the implied warranty of fitness for a particular purpose. (*See* Pltfs.' Opp'n at 3 n. 2.)

13. In opposition to the present Motions to Dismiss, Plaintiffs do not argue that third-party beneficiary status saves their implied warranty claims notwithstanding the lack of vertical privity. Nevertheless, the Court assumes Plaintiffs would request the opportunity to replead this issue, which appears to the Court, as pled in the MCC, to be equally applicable to Plaintiffs here.

14. While not necessarily required to allege fraudulent *concealment* under Rule 9(b), Plaintiffs allege many instances where Toyota made partial representations and misrepresentations, giving rise to a duty to disclose, as explained below.

15. Plaintiffs no longer assert claims for intentional and negligent misrepresentation in certain amended complaints. (*See, e.g., Akamike* FAC (Docket No. 8).)

The Court finds that Plaintiffs have sufficiently pled fraud under Rule 9(b) to survive a motion to dismiss. In the exemplar complaints, Plaintiffs plead that Toyota concealed from Plaintiffs material facts regarding the SUA defect (*e.g., Roberts,* ¶¶ 6–10, 75(b), 109–14, 125), going as far back as 2002 (*e.g., Roberts,* ¶ 50), for the purposes of avoiding escalating recall and public relations costs (*e.g., Roberts,* ¶¶ 100, 133, 135–36). Rather than disclosing the SUA defect to consumers, Toyota often blamed consumers for SUA-related problems. (*Roberts,* ¶¶ 70, 139.) These factual allegations state the "who, what, when, where, and how" of the fraudulent concealment. Thus, Rule 9(b) is satisfied.[16]

### B. *Fraudulent Concealment*
#### 1. *Legal Standard*

The Court recently summarized the case law applicable to fraudulent concealment and the duty to disclose under California law in its Economic Loss Order. (Docket No. 510 at 78–79, 81–86.) The Court adopts that discussion here.

#### 2. *Analysis*

Toyota argues that Plaintiffs cannot allege that Toyota had an independent duty to disclose facts regarding the alleged ETCS defect because Toyota did not have exclusive knowledge of material facts that were not known or knowable to Plaintiffs, Toyota did not conceal any material facts where no Plaintiff alleges having made an investigation or having sought information from Toyota, and Toyota's opinions regarding the quality of its products are not actionable as representations of fact. (Defs.' Mem. at 21, 23, 24.)

Plaintiffs contend that Toyota had a duty to disclose the alleged defect because Toyota (a) occupied a superior position of knowledge regarding the condition of its vehicles; (b) made partial disclosures about the safety and quality of the subject vehicles without revealing their defective nature; and (c) fraudulently and affirmatively concealed the defective nature of the subject vehicles from Plaintiffs. (*See, e.g., Roberts,* ¶ 183.) Plaintiffs also contend that Toyota shared a relationship of "trust and confidence" with its consumers such that a duty to disclose arises. (Pltfs.' Opp'n at 14.) Lastly, Plaintiffs argue that a duty to disclose arises under California law regarding matters of public safety. (*Id.* at 20.)

#### a. *Exclusive Knowledge*

Toyota contends that the exemplar complaints do not include sufficient facts to support an exclusive knowledge claim. (Defs.' Mem. at 22.) Toyota also argues that Plaintiffs' exclusive knowledge claim is belied by the fact that the disputed facts were known and accessible to NHTSA, as well as part of the public record. (*Id.* at 23.)

Plaintiffs argue that if the facts were known to NHTSA and the public, Toyota would not have acquiesced to paying NHTSA a record $16.4 million fine for belatedly disclosing defects. (Pltfs.' Opp'n at 18.)

 As an initial matter, the Court is mindful that remedial action such as repairing sticky accelerator pedals (even if not disclosed to NHTSA within five business days, resulting in a fine) does not support a permissible inference that Toyota fraudulently concealed a defect. *See Tietsworth v. Sears, Roebuck & Co.,* No. 5:09–CV–00288 JF (HRL), 2009 WL 3320486, at *5 (Oct. 13, 2009 N.D.Cal. 2009). Toyota's payment of a fine to NHTSA regarding sticky accelerator pedals is irrelevant to whether Toyota fraudu-

---

**16.** Because the allegations in the exemplar complaints are nearly identical with respect to pleading particularity under Rule 9(b), the Court does not analyze them individually.

lently concealed an underlying ETCS/SUA defect.

■ The Court finds that the exemplar complaints allege facts sufficient to demonstrate exclusive knowledge. While some facts surrounding SUA events were known to NHTSA and/or the public early on (e.g., *Roberts*, ¶¶ 52, 58), and others came to light more recently (*e.g., Roberts*, ¶¶ 73, 75(b), 81), Plaintiffs allege that Toyota had exclusive knowledge of the sheer magnitude and ongoing nature of the defect, as well as potential ways of identifying and correcting the defect. *See, e.g., Roberts*, ¶ 50 (internal recognition of SUA complaints, dating back to 2002; failure to uncover cause); ¶ 54 (internal Field Technical Report acknowledging that SUA was an "extremely serious problem for customers," expressing fear "of the frequency of this problem in near future"); ¶ 58 (knowledge of greater than 400% difference in SUA complaints in Camry models with ETCS not disclosed to consumers); ¶ 60 (receipt of a forensic report concluding presence of an ETCS defect); ¶ 90 (knowledge that recalls will not fix the problem and that software problems, faulty cruise control, and engine revs from using the air conditioning may be involved); ¶ 93 (no error codes shown, so SUA cannot be documented or replicated); ¶ 100 (convincing NHTSA to initially limit recall, saving Toyota over $100 million).

Taking Plaintiffs' allegations as true, Toyota had a duty to disclose the concealed facts because it had exclusive knowledge of those facts. *See Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1096 (N.D.Cal.2007) (sufficient allegations of exclusive knowledge where car manufacturer had exclusive access to aggregate dealership data, pre-release testing data, and numerous consumer complaints).

Toyota's reliance on *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 294, 85 Cal.Rptr. 444, 466 P.2d 996 (1970), does not diminish this duty to disclose. The *Warner* court stated that one circumstance in which non-disclosure is actionable is when "the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff." *Id.*

While prospective customers could have been tipped off to the possibility of SUA by researching past complaints filed with NHTSA, many customers would not have performed such a search, nor would they be expected to. Moreover, searching publicly available information through NHTSA and/or the public record would have only revealed the tip of the iceberg, according to the factual allegations in Plaintiffs' complaints. Plaintiffs sufficiently allege facts that were known and accessible only to Toyota that were not known or reasonably discoverable by Plaintiffs. *See, e.g., Roberts*, ¶ 54 (internal Field Technical Report acknowledging that SUA was an "extremely serious problem for customers," expressing fear "of the frequency of this problem in near future"), ¶ 90 (internal knowledge that recalls will not fix the problem and that software problems, faulty cruise control, and engine revs from using the air conditioning may be involved), ¶ 106 (dealer Technical Service Bulletins acknowledging SUA), ¶¶ 109–14, 128, 134 (internal testing and knowledge of SUA), ¶ 122 (engineer with knowledge of SUA not presented to NHTSA), ¶ 125 (internal knowledge that aggregate number of complaints was approximately 37,900).

Thus, the Court finds that Plaintiffs have sufficiently alleged a duty to disclose based on exclusive knowledge.

b. *Concealment of Material Facts*

■ Toyota argues that Plaintiffs cannot allege facts supporting the assertion that Toyota actively concealed information because Plaintiffs merely rely on conclusions regarding Toyota's interactions with NHTSA and others. (Defs.' Mem. at 23.)

The Court disagrees. Plaintiffs have alleged sufficient factual allegations to support a finding of active concealment at this stage based on alleged concealment of certain material facts. *See, e.g., Roberts,* ¶ 14 (concealed knowledge that brake override could prevent SUA), ¶¶ 16, 18 (concealing fact that recall was a safety measure meant to address design defect, not just a "confidence" booster); ¶¶ 17, 19(c) (recalls do not address design defect); ¶ 50 (concealing discovery of SUA defect in 2002 and the fact that "no known remedy exists ... at this time"); ¶ 53 (internal recognition of "unwanted acceleration" in a Sienna); ¶ 70 (dealer acknowledging SUA is "normal for this model," yet not acknowledged by Toyota overall); ¶ 75(b) (ignoring 1,200 SUA complaints over eight-year period); ¶¶ 84, 87 (recalls do not address all SUA; Toyota hiding electronic defects); ¶ 92 (erroneously asserting that the ETCS software could not be faulted); ¶ 106 (dealer Technical Service Bulletins acknowledging SUA); ¶¶ 109–14 (concealment of internal testing and knowledge regarding SUA); ¶ 118 (concealment of relevant complaints from NHTSA); ¶ 121 (concealment of expert report regarding ETCS failure); ¶ 122 (concealing engineer who knew of electronic failures from NHTSA); ¶ 123 (removing reference to "vehicle speed control" problems); ¶ 125 (concealing actual number of complaints received reached 37,900); ¶ 128 (acknowledging it had a "less defensible product"); ¶ 130 (knowledge of SUA defect for at least three years); ¶ 134 (internal acknowledgment of SUA). Toyota cannot credibly claim that these facts, if true, are not material.

The foregoing allegations are sufficient to demonstrate active concealment at the pleadings stage. *See Tietsworth v. Sears,* *Roebuck & Co.,* 720 F.Supp.2d 1123, 1134–36 (N.D.Cal.2010) (active concealment sufficiently alleged where Plaintiffs contacted defendant for service of defective machines and were told there was no defect and/or denied free service or replacement parts).

While Toyota is correct that preventing a plaintiff from discovering an important fact is one way to demonstrate active concealment (Reply at 7, citing *Judicial Council of California Civil Jury Instructions* ("CACI") No. 1901), it is not the only way. Active concealment standing alone is sufficient. *See* CACI No. 1901 (one method of proving concealment is for a plaintiff to demonstrate that defendant "actively concealed an important fact from [plaintiff]"). Whether Plaintiffs first sought to discover important facts before they were actively concealed is not controlling here. Plaintiffs plead fraudulent concealment, which by definition, means they could not be expected to seek facts which they had no way of knowing existed. *See Baggett v. Hewlett–Packard Co.,* 582 F.Supp.2d 1261, 1267 (C.D.Cal.2007) (fraudulent concealment allegations are not expected to point out the specific moment when defendant failed to act).

Thus, the Court finds that Plaintiffs have sufficiently alleged a duty to disclose based on concealment of material facts.

c. *Partial Representations*

 Toyota argues that Plaintiffs cannot demonstrate that it made partial representations because the statements on which Plaintiffs rely are not representations of actionable facts, but rather general, vague, and unspecific assertions that a reasonable consumer would find to be promotional statements.[17] (Defs.' Mem. at 25.)

---

17. Toyota makes similar arguments regarding allegedly false and/or misleading representations in their advertising materials with respect to claims falling under California Business and Professions Code §§ 17200 and 17500. The Court does not address these arguments because none of the exemplar

Plaintiffs argue that many of their allegations concern misrepresentations of material facts, and where the speaker has special knowledge of the subject, even opinion statements may be construed as actionable factual misstatements. (Pltfs.' Opp'n at 22 (citing *Furla v. Jon Douglas Co.*, 65 Cal.App.4th 1069, 1080–81, 76 Cal. Rptr.2d 911 (Cal.App.1998)).)

The Court agrees that some of Toyota's alleged statements may fairly be characterized as generalized opinions (*e.g., Scott*, ¶¶ 63, 121 ("high quality, reliable, and dependable", "outstanding quality, dependability, and peace of mind")). *See Oestreicher v. Alienware Corp.*, 544 F.Supp.2d 964, 973 (N.D.Cal.2008); *Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1140 (C.D.Cal.2005). These statements constitute "puffing" and are not analogous to the type of opinion that may be construed as actionable under limited circumstances. *See 625 3rd St. Associates, L.P. v. Alliant Credit Union*, 633 F.Supp.2d 1040, 1051– 52 (N.D.Cal.2009) (construing CEO's opinion regarding the financial health and prospects of his company, when made in the context of a significant corporate transaction, as factual misstatements).

However, other statements cited by Plaintiffs have a factual basis and may be proven true or false during discovery. *See, e.g., Roberts*, ¶ 62 (stating to NHTSA there was "no evidence of a system or component failure" and "vehicles operated as designed"); ¶ 65 (representation that water damage caused SUA, no abnormality in ETCS); ¶ 66 (telling NHTSA the floor mat issue "is not a safety concern"); ¶ 75 (claiming vehicles were not defective and subsequently being rebuked by NHTSA for being "inaccurate" and "misleading"); ¶ 118 (stating to NHTSA that no defect trend had emerged and that ETCS could not fail in unknown ways); ¶ 126 (omitting reference to SUA in customer Q & A document); ¶ 137 (falsely stating that "vehicle brakes would have restrained vehicle motion"); ¶ 138 (falsely stating that "there is no factor or trend indicating that a vehicle or component defect exists"); ¶ 139 (telling customer "[i]t is virtually impossible for this type of [SUA] incident to happen."). The foregoing allegations demonstrate Plaintiffs have sufficiently alleged actionable statements. *Anunziato*, 402 F.Supp.2d at 1139 ("While some of eMachines' representations constitute puffery, others do not.... [A]t least some actionable statements have been pled.").

Thus, the Court finds that Plaintiffs have sufficiently alleged a duty to disclose based on partial misrepresentations.

### d. *Trust and Confidence*

■ Plaintiffs recognize that they have not explicitly pleaded a "fiduciary" or "confidential" relationship. (Pltfs.' Opp'n at 14.) However, Plaintiffs argue nonetheless that they formed a relationship of "trust and confidence" with Toyota, giving rise to a duty to disclose. (*Id.*) Plaintiffs support this argument by citing purposeful concealment of vehicle defects and partial representations regarding safety.

Plaintiffs conflate a duty to disclose under "concealment of material facts" and "partial misrepresentations," as discussed above, with the type of relationship contemplated by *Ford v. Shearson Lehman/Am. Express, Inc.*, 180 Cal.App.3d 1011, 1020–22, 225 Cal.Rptr. 895 (1986). In *Shearson*, the trust and confidence arose out of a fiduciary relationship between a client and his security broker and investment adviser where the individual ceded control over his stockholdings, which were subsequently liquidated in a scheme by the fiduciaries. This case is dissimilar because Plaintiffs allege no facts

complaints, as amended, raise this type of claim.

in support of finding a fiduciary or other confidential relationship based on Plaintiffs ceding control to Toyota, or a particular vulnerability on Plaintiffs' part.

Thus, the Court finds that Plaintiffs have not stated a duty to disclose under this factor.

### e. *Matters of Public Safety*

 Plaintiffs allege that the potential for SUA constitutes a safety hazard giving rise to a duty to disclose. (Pltfs.' Opp'n at 20.) Toyota contends that alleging a safety risk does not on its own give rise to a duty to disclose, it merely establishes that the alleged nondisclosure relates to a material fact. (Defs.' Mem. at 26.)

The Court finds that the risk of injury and/or death associated with the alleged SUA defect is the type of "unreasonable risk" that leads to a duty to disclose under California law. *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 836, 51 Cal.Rptr.3d 118 (Cal.App.2006). *See also Falk*, 496 F.Supp.2d at 1096 (citing as further strength of plaintiffs' defect allegations "the [alleged] risk of inadvertent speeding, driving at unsafe speeds, and accidents").

For the foregoing reasons, Toyota's motions to dismiss Plaintiffs' fraudulent concealment claims are denied.

### C. *Misrepresentation*

Toyota argues that, for the same reasons Plaintiffs cannot demonstrate partial misrepresentations of fact, Plaintiffs fail to state intentional and negligent misrepresentation claims. (Defs.' Mem. at 25.)

Plaintiffs contend that Toyota's arguments are misplaced because none of the exemplar complaints allege misrepresentation claims. (Pltfs.' Opp'n at 20 & n. 7.)

The Court agrees with Plaintiffs. Because none of the exemplar complaints raise claims for misrepresentation and/or negligent misrepresentation, the Court de-

clines to address Toyota's arguments at this time.

### VII. *Conclusion*

As set forth herein, the Court grants in part and denies in part Toyota's Motions to Dismiss.

Plaintiffs are granted 45 days leave to replead; defendants have 60 days thereafter to respond.

**IT IS SO ORDERED.**